UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

DESMOND JOSEPH, #578713,

       Plaintiff,                              CIVIL ACTION NO. 11-11202

      v.                                   DISTRICT JUDGE AVERN COHN

MICHIGAN DEPARTMENT OF         MAGISTRATE JUDGE MARK A. RANDON
CORRECTIONS, KAREN KENNEDY,
RANDALL HAAS, TERRY MALLOY,
and DENNIS STRAUB,

       Defendants.
_____/

### REPORT AND RECOMMENDATION TO GRANT DEFENDANTS' MOTIONS FOR SUMMARY JUDGMENT (DKT NOS. 14 AND 20)

### I. INTRODUCTION

This is a prisoner civil rights case filed under 42 U.S.C.§ 1983. Proceeding *pro se*, Plaintiff Desmond Joseph alleges that, against his religious beliefs, he was forced to take a tuberculosis test and suspended from his strict vegetarian diet in violation of the United States Constitution and the Religious Land Use and Institutionalized Persons Act. Judge Avern Cohn referred the matter to this Magistrate Judge for all pretrial proceedings.

Two summary judgment motions are pending (Dkt. Nos. 14, 20), through which all defendants (collectively "Defendants") seek dismissal of Plaintiff's claims for failure to exhaust administrative remedies. Plaintiff responded to both motions (Dkt. Nos. 17, 22). Since this Magistrate Judge finds that Plaintiff failed to exhaust the administrative remedies provided by

the Michigan Department of Corrections ("MDOC"), **IT IS RECOMMENDED** that Defendants' motions be **GRANTED** and Plaintiff's lawsuit be **DISMISSED**.

## II. FACTS

Plaintiff is a Michigan prisoner. He is a Buddhist, approved for a strict vegetarian religious meal accommodation since March of 2010 (Dkt. No. 1, ¶ 1 (Complaint)). In July of 2010, Plaintiff was confined at the Kinross Correctional Facility ("Kinross") (*id.*). As part of his annual health screening at Kinross, Plaintiff had to submit to a tuberculosis[1] ("TB") test. When he learned that the TB injection "was a derivation of another humans [sic] TB protein, albeit purified, " Plaintiff objected on religious grounds (*id.* at ¶ 2). But, faced with the threat of solitary confinement, he took the test (*id.*).

Plaintiff filed a grievance about the TB test. However, his Step III grievance appeal was rejected as untimely because it was filed ten days late – without providing any justification for the delay (Dkt. No. 14, Ex. C, p. 2).

Plaintiff was subsequently transferred from Kinross to Macomb Correctional Facility ("Macomb"). At Macomb, a fact finding hearing concluded that Plaintiff had possessed and/or consumed non-vegan food items. As a result, he was suspended from his strict vegetarian religious menu for 60 days (*id.* at ¶ 6). Plaintiff grieved the suspension, but he did not file his appeal at Step III until May 21, 2011 – a month *after* this lawsuit was filed (Dkt No. 1; Dkt No. 17, ECF p. 4).

---

[1] Tuberculosis is an infectious disease of humans and other animals caused by species of *Mycobacterium*. The disease can affect any organ, although in humans it usually resides in the lungs. *Dorland's Illustrated Medical Dictionary* (31st ed. 2007) p. 2006.

Plaintiff seeks his costs and filing fees. He also seeks declaratory and injunctive relief requiring Defendants to refrain from enforcing MDOC policies which prejudice his religious beliefs.

### A. The MDOC's Grievance Procedure

The MDOC provides prisoners with a method to seek redress for alleged violations of policy and procedure or unsatisfactory conditions of confinement. The grievance procedure and applicable rules are set forth in MDOC Policy Directive 03.02.130 ("the Policy") (Dkt. No. 14, Ex. A). The Policy was last updated on March 5, 2007, and became effective for all grievances, including Plaintiff's, filed after July 9, 2007.

The Policy outlines a three-step written grievance procedure. Prior to filing a grievance at Step I, a prisoner is generally required to seek an informal resolution of the issue with the staff member involved. After a formal Step I grievance has ben filed, the prisoner may file a grievance at the next step if he is dissatisfied with the response received at the previous step, or if a timely response is not received. As it relates to filing a Step III grievance, the Policy requires that "the grievant must send a completed Step III grievance. . .within ten business days after receiving the Step II response or, if no response was received, within ten business days after the date the response was due, including any extensions" (*id.* at §FF).

### III.  ANALYSIS

### A. Standard of Review

#### 1. *Summary Judgment*

Summary judgment is proper "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P.

56(a). A fact is material only if it might affect the outcome of the case under the governing law. *See Anderson v. Liberty Lobby, Inc*., 477 U.S. 242, 249 (1986). On a motion for summary judgment, the court must view the evidence, and any reasonable inferences drawn from the evidence, in the light most favorable to the non-moving party. *See Matsushita Elec. Indus. Co. v. Zenith Radio Corp*., 475 U.S. 574, 587 (1986) (citations omitted); *Redding v. St. Eward*, 241 F.3d 530, 531 (6th Cir. 2001).

The moving party has the initial burden to demonstrate an absence of evidence to support the non-moving party's case. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 325 (1986). If the moving party carries this burden, the party opposing the motion "must come forward with specific facts showing that there is a genuine issue for trial." *Matsushita*, 475 U.S. at 587. The Court must determine whether the evidence presents a sufficient factual disagreement to require submission of the challenged claims to a jury or whether the evidence is so one-sided that the moving party must prevail as a matter of law. *See Anderson*, 477 U.S. at 252 ("The mere existence of a scintilla of evidence in support of the plaintiff's position will be insufficient; there must be evidence on which the jury could reasonably find for the plaintiff.").

**B. The Prison Litigation Reform Act**

Under the Prisoner Litigation Reform Act ("PLRA"), a prison inmate cannot bring a civil rights action challenging prison conditions until "such administrative remedies as are available are exhausted." 42 U.S.C. § 1997e(a). Specifically, a prisoner must follow the state corrections system's grievance procedure and properly exhaust all administrative remedies *before* filing an action in federal court. *Woodford v. Ngo*, 548 U.S. 81, 88, 126 S.Ct. 2378, 165 L.Ed.2d 368 (2006). Proper exhaustion includes "compliance with an agency's deadlines and other critical

procedural rules." *Id*. at 90. As the *Woodford* Court explained, the benefits of exhaustion are unattainable if prisoners ignore the rules:

> The benefits of exhaustion can be realized only if the prison grievance system is given a fair opportunity to consider the grievance. The prison grievance system will not have such an opportunity unless the grievant complies with the systems critical procedural rules. A prisoner who does not want to participate in the prison grievance system will have little incentive to comply with the system's procedural rules unless noncompliance carries a sanction. . . . *For example, a prisoner wishing to bypass available administrative remedies could simply file a late grievance without providing any reason for failing to file on time*. If the prison then rejects the grievance as untimely, the prisoner could proceed directly to federal court. And acceptance of the late grievance would not thwart the prisoner's wish to bypass the administrative process; the prisoner could easily achieve this by violating other procedural rules until the prison administration has no alternative but to dismiss the grievance on procedural grounds. *We are confident that the PLRA did not create such a toothless scheme*.

*Id.* at 95 (emphasis added). Therefore, a grievance rejected as untimely, though appealed through all steps of a grievance procedure, does not fulfill the PLRA's exhaustion requirement.

As discussed above, besides complying with the prison systems critical rules, a prisoner must also complete the administrative process *before* filing a lawsuit in federal court. *Freeman v. Francis*, 196 F.3d 641, 645 (6th Cir. 1999). A prisoner is not permitted to exhaust administrative remedies while his federal suit is pending. *Larkins v. Wilkinson*, 1998 WL 898870 at *2 (6th Cir. Dec. 17, 1998) (unpublished) (dismissing plaintiff's complaint where his "attempt to exhaust his available administrative remedies only after filing suit in federal court ignores the clear mandate of § 1997e(a) which requires exhaustion ... *prior* to filing suit in federal court."(Emphasis added)). *See also Perez v. Wisconsin Dep't of Corrections*, 182 F.3d 532, 533 (7th Cir.1999) (case remanded with instructions to dismiss for failure to exhaust administrative remedies).

Plaintiff's Step III grievance regarding the TB injection was rejected by prison officials as untimely (without justification).  The prison properly enforced its timeliness procedural requirement and, therefore, the PLRA bars Plaintiff's claim.  *Reed-Bey v. Pramstaller*, 603 F.3d 322, 325 (6th Cir. 2010) (prison system must enforce its own administrative rules to preserve the PLRA's procedural bar).

Plaintiff acknowledges that his Step III grievance about his vegetarian diet was not filed until *after* he filed this lawsuit.  This issue is procedurally barred as well, and Plaintiff's lawsuit must be dismissed in its entirety.

## IV.  CONCLUSION

For the reasons stated above, **IT IS RECOMMENDED** Defendants' motions (Dkt. Nos. 14 and 20) be **GRANTED** and Plaintiff's lawsuit **DISMISSED.**

The parties to this action may object to and seek review of this Report and Recommendation, but are required to act within fourteen (14) days of service of a copy hereof as provided for in 28 U.S.C. § 636(b)(1) and Fed.R.Civ.P. 72(b)(2).  Failure to file specific objections constitutes a waiver of any further right of appeal.  *See Thomas v. Arn*, 474 U.S. 140 (1985); *Howard v. Secretary of HHS*, 932 F.2d 505, 508 (6th Cir. 1991); *United States v. Walters*, 638 F.2d 947, 949-50 (6th Cir. 1981).  The filing of objections which raise some issues, but fail to raise others with specificity, will not preserve all the objections a party might have to this Report and Recommendation.  *See Willis v. Secretary of HHS*, 931 F.2d 390, 401 (6th Cir. 1991); *Smith v. Detroit Fed'n of Teachers Local 231*, 829 F.2d 1370, 1373 (6th Cir. 1987).  Pursuant to E.D. Mich. LR 72.1(d)(2), a copy of any objections is to be served upon this magistrate judge.

Within fourteen (14) days of service of any objecting party's timely filed objections, the opposing party may file a response. The response shall be no more than 20 pages in length unless, by motion and order, the page limit is extended by the court. The response shall address each issue contained within the objections specifically and in the same order raised.

s/Mark A. Randon<br>
MARK A. RANDON<br>
UNITED STATES MAGISTRATE JUDGE

Dated: January 13, 2012

*Certificate of Service*

*I hereby certify that a copy of the foregoing document was served on the parties of record on this date, January 13, 2012, by electronic and/or first class U.S. mail.*

<i>s/Melody R. Miles</i><br>
<i>Case Manager to Magistrate Judge Mark A. Randon</i>