UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

DESMOND JOSEPH,

    Plaintiff,

v.                                                                                            Case No. 11-11202

MICHIGAN DEPARTMENT OF CORRECTIONS,                  HON. AVERN COHN
KAREN KENNEDY, RANDALL HAAS, TERRY
MALLOY, and DENNIS STRAUB,

    Defendants.

_____/

## MEMORANDUM AND ORDER ADOPTING IN PART AND REJECTING IN PART REPORT AND RECOMMENDATION (Doc. 23) AND GRANTING IN PART AND DENYING IN PART DEFENDANTS' MOTIONS FOR SUMMARY JUDGMENT (Docs. 14, 20)

I. Introduction

This is a prisoner civil rights case under 42 U.S.C. § 1983. Plaintiff, proceeding pro se, claims that defendants have violated his First and Fourteenth Amendment rights and the Religious Land Use and Institutionalized Persons Act. Plaintiff is a Buddhist and approved for religious accommodation for a strict vegetarian diet since March of 2010. Plaintiff's claims stem from two events. The first is when he was allegedly forced to take a tuberculosis (TB) test. The second concerns his suspension from his strict vegetarian diet. The matter was referred to a magistrate judge for all pretrial proceedings, before whom defendants filed summary judgment motions on the grounds that plaintiff had failed to exhaust his administrative remedies. (Docs. 14, 20). The

magistrate judge issued a report and recommendation (MJRR), recommending that the motions be granted. Before the Court are plaintiff's objections to the MJRR. For the reasons that follow, the Court concludes that defendants have failed to carry their summary judgment burden with respect to whether plaintiff's claim regarding the TB was exhausted, i.e. whether his Step III grievance was untimely filed. As such, the MJRR will be adopted in part and rejected in part. Defendants' motions will be granted in part and denied in part.

## II. Review of the MJRR

A district court must conduct a <u>de novo</u> review of the parts of a magistrate judge's report and recommendation to which a party objects. 28 U.S.C. § 636(b)(1). The district "court may accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate" judge. <u>Id</u>. The requirement of <u>de novo</u> review "is a statutory recognition that Article III of the United States Constitution mandates that the judicial power of the United States be vested in judges with life tenure." <u>United States v. Shami</u>, 754 F.2d 670, 672 (6th Cir. 1985).

A general objection, or one that merely restates the arguments previously presented, is not sufficient to alert the court to alleged errors on the part of the magistrate judge. An "objection" that does nothing more than state a disagreement with a magistrate judge's suggested resolution, or simply summarizes what has been presented before, is not an objection as that term is used in this context. <u>Howard v. Sec'y of Health and Human Servs.</u>, 932 F.2d 505, 508 (6th Cir. 1991) ("It is arguable in this case that Howard's counsel did not file objections at all.... [I]t is hard to see how a district court reading [the 'objections'] would know what Howard thought the magistrate

had done wrong.").

### III. Legal Standards and MDOC Policy

In Jones v. Bock, 549 U.S. 199 (2007), the Supreme Court held that "exhaustion is an affirmative defense, and prisoners are not required to specifically plead or demonstrate exhaustion in their complaints." Id. at 923. The Supreme Court defined the level of detail necessary to exhaust as simply compliance with the administrative grievance process. Id. Moreover, the burden rests on the defendant to show that a plaintiff failed to exhaust when asserting exhaustion as an affirmative defense. Id. Accordingly, exhaustion is satisfied if plaintiff complied with the applicable MDOC grievance procedure and defendants bear the burden of showing otherwise. Kramer v. Wilkinson, 226 F. App'x 461, 462 (6th Cir. 2007) (A prisoner-plaintiff "does not bear the burden of specially pleading and proving exhaustion; rather, this affirmative defense may serve as a basis for dismissal only if raised and proven by the defendants.").

A moving party with the burden of proof faces a "substantially higher hurdle." Arnett v. Myers, 281 F.3d 552, 561 (6th Cir. 2002); Cockrel v. Shelby County Sch. Dist., 270 F.3d 1036, 1056 (6th Cir. 2001). "Where the moving party has the burden-the plaintiff on a claim for relief of the defendant on an affirmative defense-his showing must be sufficient for the court to hold that no reasonable trier of fact could find other than for the moving party." Calderone v. United States, 799 F.2d 254, 259 (6th Cir.1986). The Sixth Circuit has emphasized that the party with the burden of proof "must show the record contains evidence satisfying the burden of persuasion and that the evidence is so powerful that no reasonable jury would be free to disbelieve it." Arnett, 281 F.3d at 561.

The Supreme Court defines proper exhaustion under 42 U.S.C. § 1997e(a) as "using all steps that the agency holds out, and doing so properly (so that the agency addresses the issues on the merits)." Woodford v. Ngo, 548 U.S. 81, 90 (2006). "Proper exhaustion demands compliance with an agency's deadlines and other critical procedural rules because no adjudicative system can function effectively without imposing some orderly structure on the course of its proceedings." Id. at 90–91. The Supreme Court also observed that "[t]he PLRA attempts to eliminate unwarranted federal-court interference with the administration of prisons, and thus seeks to 'afford corrections officials time and opportunity to address complaints internally before allowing the initiation of a federal case.' " Id. at 93, quoting Porter v. Nussle, 534 U.S. 516, 525, 122 S.Ct. 983, 152 L.Ed.2d 12 (2002) (alteration omitted).  Exhaustion serves a dual purpose: it gives prisoners "an effective incentive to make full use of the prison grievance process and accordingly provides prisons with a fair opportunity to correct their own errors." Id. at 94.  Additionally, the exhaustion requirement "has the potential to reduce the number of inmate suits, and also to improve the quality of suits that are filed by producing a useful administrative record." Jones, 127 S.Ct. at 915–16.  If a prisoner fails to follow the grievance process by, as alleged here, filing an untimely grievance at any point in the process, his claim must be dismissed.  See Woodford, 548 U.S. at 545.

As explained in the MJRR, the applicable MDOC grievance procedure is as follows:

> The MDOC provides prisoners with a method to seek redress for alleged violations of policy and procedure or unsatisfactory conditions of confinement. The grievance procedure and applicable rules are set forth in MDOC Policy

4

> Directive 03.02.130 ("the Policy") (Dkt. No. 14, Ex. A). The Policy was last updated on March 5, 2007, and became effective for all grievances, including Plaintiff's, filed after July 9, 2007.
>
> The Policy outlines a three-step written grievance procedure. Prior to filing a grievance at Step I, a prisoner is generally required to seek an informal resolution of the issue with the staff member involved. After a formal Step I grievance has been filed, the prisoner may file a grievance at the next step if he is dissatisfied with the response received at the previous step, or if a timely response is not received. As it relates to filing a Step III grievance, the Policy requires that "the grievant must send a completed Step III grievance. . .within ten business days after receiving the Step II response or, if no response was received, within ten business days after the date the response was due, including any extensions" (id. at §FF).

MJRR at p. 3.

## IV.  Analysis

### A.  Plaintiff's Claims Regarding Suspension from his Vegetarian Diet

Plaintiff has not objected to the magistrate judge's recommendation regarding the suspension from his strict vegetarian diet. As the magistrate judge explained, plaintiff did not file a Step III grievance until May 21, 2011, after this case was filed. A prisoner cannot exhaust administrative remedies while their case is pending. Thus, the MJRR will be adopted on this portion of plaintiff's claims.

### B.  Plaintiff's Claims Regarding the TB Test

Plaintiff's claims surrounding the TB test, however, is another matter. Defendants moved for summary judgment, contending that because plaintiff's Step III appeal was denied as untimely, he failed to exhaust his administrative remedies. Plaintiff argued in response that his appeal was timely. The magistrate judge agreed with defendants. Resolution of this issue requires first setting forth a chronology relating to plaintiff's grievance and then examining that chronology.

1. Chronology of Plaintiff's Grievance

- On July 22, 2010, while incarcerated at the Kinross Correctional Facility (Kinross), plaintiff was required to undergo an annual health screening. As part of the screening, he had to submit to a TB test. When plaintiff learned that the TB injection contained a derivative of human protein, he objected to taking the test on religious grounds. However, he says he took the test after being faced with the threat of solitary confinement.

- On July 26, 2010, plaintiff filed a Step I grievance, given the identifier KCF00700940-12e.

- The prison responded to his grievance at Step I in a document attached to defendants' papers (Doc. 14-4) as follows:

> **Joseph/578713**      **8/2/10**      **KCF grievance 100794012E**
>
> **Step I grievance response:**
>
> The grievant states he was forced by the nurse to take a TB test on July 22, 2010. He states the test is against his religious belief. According to medical record, the nurse offered the test and the grievant agreed to have a TB test on the above day. Per policy, TB testing is mandatory for all prisoners but not forced on patients. Patients can refuse TB testing at any time.

This response was attached to the grievance form, which is part of the record. (Doc. 14-4). On the grievance form, in a box entitled "Date returned to Grievant:" it states "8/10/10."

- On October 4, 2010, plaintiff appealed this to Step II. The Prisoner/Parolee

Grievance Appeal Form, form CSJ-247B (grievance form),[1] is attached to defendants papers (Doc. 14-4). The Step II portion of the form contains plaintiff's description of his claim (dated October 4, 2010). The grievance form also indicates that it was "received" by the Grievance Coordinator at Step II on October 11, 2010.[2]

- On October 11, 2010, the Warden's Secretary send plaintiff a letter with the subject heading "Receipt for the Grievance Appeal Form," states:

> I acknowledge receipt of your grievance appeal (Identifier KCF 10 07 00904 12e) which was received in this office on October 11, 2010.
> Unless you are otherwise notified, you should be provided a Step II response within 15 business days of the date your appeal was received, or no later than November 1, 2010. If you have not received a response by this date or agreed to an extension, you may submit your Step III appeal to the Director's Office.

(Doc. 17 - Exhibit B to plaintiff's response).

- At some point, plaintiff was transferred to the Macomb Correctional Facility (MCF).

- On October 12, 2010, a response was prepared to plaintiff's Step II grievance. It is attached to plaintiff's grievance form. It states in relevant part:

> **Grievance Step II Response**                             Joseph #578713
>
> Investigation determined grievant's issue was appropriately addressed by the Step I Respondent and is affirmed at the Step II Appeal. As stated, patient's [sic] an refuse TB testing at any time, however, per PD 03.04.110, Control of Communicable Diseases, the regional Medical

---

[1]As will be explained, this form appears to be plaintiff's Step II and Step III grievance form.

[2]While MDOC policy states that a Step II grievance must be filed within 10 days after receiving the Step I response, defendants have not argued that plaintiff's Step II grievance was untimely. Moreover, as explained infra, the MDOC did not reject plaintiff's Step II as untimely.

7

> Officer shall determine if the patient needs to be quarantined or if other action may be taken which ensures the safety of patients and staff.

• On the accompanying grievance form, the section entitled "Step II Response" contains a signature and a date of "10/12/10." A box in this section entitled "Date Returned to Grievant" states "10/15/10." However, there is a handwritten notation above this box which reads "rcv'd @ MCF 11/1/10."

• On the grievance form, under the section entitled "Step III - Reason for Appeal," it states "No resolution is made @ Step I or II." This notation appears to be in plaintiff's handwriting. The grievance form also contains a file stamp which reads "Received MDOC Nov. 09, 2010 Grievance and Appeals."

• On November 15, 2011, the MDOC rejected plaintiff's Step III appeal as untimely. The Step III Grievance Response reads in relevant part:

> Grievant alleges that he is being tested for TB against his wishes.
>
> All documents provided have been reviewed. In accordance with PD 03.02.130 Grievances are to be rejected as vague, duplicative, untimely, illegible, etc. Pursuant to policy, this grievance is rejected as untimely filed at the Step III appeal. The grievant's Step III appeal was to be received by 10/30/2010, however, it was not received until 11/9/2010. The grievant does not provide appropriate support for the delay.

2. Examination of the Chronology

It is not unreasonable to conclude based on the handwritten notation on the grievance form, that the Step II response was received at MCF, where plaintiff was incarcerated, on November 1, 2010. This is consistent with the October 11, 2011 letter to plaintiff which stated he would get a Step II response no later than November 1, 2010.

Indeed, plaintiff asserts in his summary judgment papers and again in his objections that he received the Step II response on November 1, 2010. He also states that he mailed a Step III appeal that same day. Attached to his summary judgment papers is a MDOC disbursement Authorization/Catalog Order Form (mail form) which is apparently used by prisoners when they send out mail. The mail form is dated November 1, 2010 and indicates an address to the Director's Office in Lansing (where Step III appeals must be mailed). Under the "reason/description" portion of the mail form it states "Step III Grievance KCF 007 009 012E."

Defendants, and the magistrate judge, relied solely on the MDOC's Step III response in concluding that plaintiff had failed to properly exhaust the grievance process. The problem with this analysis, however, is that it fails to take into account the other evidence in the record, particularly the grievance form and mail form. It is not unreasonable to conclude based on these documents that plaintiff received the Step II response on November 1, 2010 and mailed his Step III appeal the same day. Because his Step III appeal was received eight days later, on November 9, 2010, it should have been deemed timely under MDOC policy. Based on this record, at a minimum, there is a genuine issue of material fact as to whether plaintiff timely filed his Step III appeal. Thus, defendants have not satisfied their burden of establishing that plaintiff failed to exhaust his administrative remedies regarding his grievance over the TB test.

V. Conclusion

For the reasons stated above, the MJRR is ADOPTED IN PART AND REJECTED IN PART. Defendants' motions for summary judgment are GRANTED IN

PART AND DENIED IN PART.  Plaintiff's claims regarding the TB test continue.[3]

SO ORDERED.

      S/Avern Cohn
      AVERN COHN
      UNITED STATES DISTRICT JUDGE

Dated:  February 7, 2012

I hereby certify that a copy of the foregoing document was mailed to Desmond Joseph, 578713, Macomb Correctional Facility, 34625 26 Mile Road, New Haven, MI 48048 and the attorneys of record on this date, February 7, 2012, by electronic and/or ordinary mail.

      S/Julie Owens
      Case Manager, (313) 234-5160

---

[3]Although defendants are not entitled to summary judgment based on a failure to exhaust, this decision does not affect any other defenses defendants may raise in proper motion practice.